13 CIV 4406

**OUTTEN & GOLDEN LLP**
Adam T. Klein
Rachel Bien
Juno Turner
Sally J. Abrahamson*
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: 212-245-1000
**pro hac vice motion forthcoming*

RECEIVED
JUN 25 2013
U.S.D.C. S.D. N.Y.
CASHIERS

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

CHRISTOPHER BRUCE MACKOWN, on behalf of himself and all others similarly situated,

Plaintiff,

v.

NEWS CORPORATION and FOX ENTERTAINMENT GROUP, INC.

Defendants.

**CLASS ACTION COMPLAINT**

Plaintiff Christopher Bruce MacKown, individually and as a class representative on behalf all others similarly situated, by his attorneys Outten & Golden LLP, makes the following allegations against Defendants News Corporation and Fox Entertainment Group, Inc. ("Defendants"):

**INTRODUCTION**

1. Defendant Fox Entertainment Group, Inc. ("FEG"), a wholly owned subsidiary of Defendant News Corporation ("News Corp."), is a leader in the entertainment industry, operating in all segments of broadcast, cable, film and digital entertainment. FEG is comprised of several successful film and television units, including Twentieth Century Fox Film, Fox Television

Studios, Twentieth Century Fox Home Entertainment, Fox Soccer Channel, Fox Interactive Media, Inc., and others.

2. On September 28, 2011, in *Glatt v. Fox Searchlight Pictures, Inc.* ("*Glatt*"), former interns who worked for FEG and one of its subsidiaries, Fox Searchlight Pictures, Inc., sued those companies for unpaid wages under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). This lawsuit also alleges that FEG and its parent company, News Corp., reduced labor costs by employing a steady stream of unpaid interns in their corporate offices in California until they changed their policy in or around Fall 2010 and started paying interns – a decision that FEG's own intern recruiter called "the right decision."

3. On June 11, 2013, the Honorable Judge William H. Pauley III held that two of the Plaintiffs in *Glatt* were employees protected by the FLSA and NYLL, and certified a NYLL class of interns employed by four FEG subsidiaries. *Glatt v. Fox Searchlight Pictures, Inc.*, No. 11 Civ. 6784, 2013 WL 2495140, at *18 (S.D.N.Y. June 11, 2013).

4. Defendants' failure to pay interns for years runs afoul of basic wage-and-hour laws, including the FLSA and California labor laws, which require that employers pay all of their employees – even those who are inexperienced or entry-level – the minimum wage and overtime. The law provides no exemption for interns unless they are in a vocational training program, and the United States Department of Labor uses a six-factor test to evaluate whether a worker is a trainee or an employee.[1] A worker is a trainee only if he or she receives training similar to what would be given in a vocational school or academic educational instruction. The employer cannot

---

[1] U.S. Dep't. of Labor, *Fact Sheet #71: Internship Programs Under The Fair Labor Standards Act*, Apr. 2010, http://www.dol.gov/whd/regs/compliance/whdfs71.pdf (last visited Jan. 3, 2013).

derive any immediate advantage from the intern's work or require the intern to do the work of regular employees.[2] "[I]f the interns are engaged in the operations of the employer or are performing productive work (for example, filing, performing other clerical work, or assisting customers), then the fact that they may be receiving some benefits in the form of a new skill or improved work habits will not exclude them from the FLSA's minimum wage and overtime requirements because the employer benefits from the interns' work."[3]

5. Interns were a crucial labor force in Defendants' corporate offices, performing clerical, research, marketing, publicity, and other productive tasks. In fact, even though it did not pay them, Defendants treated interns as employees for all intents and purposes, by collecting I-9 Employment Eligibility Verification Forms from them upon hire, classifying them as "employees" for purposes of Worker's Compensation laws, subjecting them to their corporate policies, and referring to them as "at will" employees in offer letters welcoming them to the company.

6. Plaintiff MacKown brings a claim for unpaid minimum wages under the FLSA, 29 U.S.C. § 206. He also brings claims for violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("CA UCL"), and the California Labor Code and related regulations, Cal. Labor Code §§ 201, 202, 203, 204, 226, 1174, 1194, and 1197, Cal. Wage Order No. 12, as a class action pursuant to Fed. R. Civ. P. 23.

---

2 *Id.*

3 *Id.*

## THE PARTIES

**Christopher Bruce MacKown**

7. Plaintiff Christopher Bruce MacKown ("MacKown") is an adult individual who resides in Garden Grove, California.

8. MacKown was employed by Defendants as an unpaid intern in Los Angeles, California for Fox Soccer Channel from approximately February 2010 through approximately May 2010 and for Fox Sports.com from approximately May 2010 through approximately August 2010.

9. MacKown is a covered employee within the meaning of the California Labor Code and California Wage Order No. 12.

**Defendants**

10. Defendant News Corp. is a Delaware corporation that has its principal executive offices in New York at 1211 Avenue of the Americas, New York, NY 10036.

11. Defendant FEG is a Delaware corporation registered with the New York State Department of State as an Active Foreign Business Corporation with its principal offices located at 10201 West Pico Blvd., Los Angeles, California 90064.

12. FEG is an entertainment company that operates businesses in all segments of broadcast, cable, film, and digital entertainment.

13. FEG is a wholly-owned and controlled subsidiary of News Corp.

14. Defendants are covered employers within the meaning of the FLSA, the California Labor Code, and California Wage Order No. 12 and, at all relevant times, they operated as a single integrated enterprise that employed and/or jointly employed Plaintiff and similarly situated interns.

15. Information regarding FEG and its subsidiaries is located on New Corp.'s website, www.newscorp.com.

16. FEG does not file its own SEC filings. Its filings are included in News Corp.'s SEC filings.

17. During all relevant times, News Corp. has had the power to control the conditions of employment of FEG employees.

18. News Corp. promoted Linda Johns to be the Executive Vice President of Human Resources for FEG. In that role, according to New Corp.'s website, Ms. Johns was tasked with "lead[ing] and direct[ing] Human Resources efforts across all the Fox Entertainment Group companies, including Fox Entertainment Group, Fox Networks Group, as well as MySpace, Fox Mobile, Fox Audience Network, Photobucket and IGN."[4]

19. Upon information and belief, News Corp. determined the terms of employment of the Co-Chairman and Chief Executive Officers of Fox Filmed Entertainment, which comprises FEG's film divisions, including Twentieth Century Fox Film and Fox Searchlight Pictures.

20. Upon information and belief, News Corp. organizes its subsidiaries, including FEG, into business groupings that share various support services, including human resources, recruiting, and legal.

21. During the relevant period, a Fox Filmed Entertainment Human Resources department provided human resources service to various FEG subsidiaries.

22. During the relevant period, Fox Group, another grouping, provided employment litigation and risk management services to FEG subsidiaries.

---

4 http://www.newscorp.com/news/news_425.html (last visited June 18, 2013).

23. During the relevant period, a Shared Services department provided services, including recruitment and training, to various FEG subsidiaries and to Fox Group.

24. During all relevant times, News Corp. has had the power to make major decisions that affect the management of FEG and its subsidiaries.

25. News Corp. has restructured the senior leadership teams that oversee its media and entertainment properties, which, upon information and belief, includes FEG and its subsidiaries, on several occasions according to press releases on News Corp.'s website, www.newscorp.com.

26. Job openings at FEG and its subsidiaries are posted on News Corp.'s website, http://careers.newscorp.com/JobSearch.

27. Employees of FEG and its subsidiaries, including interns, are covered under News Corp.'s worker's compensation insurance policy.

28. Defendants share common management.

29. Upon information and belief, Peter Chernin, who served as the Chief Operating Officer and President of News Corp. also served as the Chief Executive Officer of Fox Group. Upon information and belief, when Mr. Chernin left News Corp., the Fox companies that he oversaw, including FEG and its subsidiaries, reported directly to Rupert Murdoch, News Corp.'s Chairman and Chief Executive Officer.

30. During all relevant times, a large number of U.S.-based FEG subsidiaries participated in an internship program ("FEG Internship Program") that was centrally run by Defendants and was governed by the same policies, including Defendants' personnel and compensation policies.

31. Interns who participated in the FEG Internship Program applied through Defendants' centralized website, www.foxcareers.com, and were tracked through Defendants' centralized Human Resources databases, Virtual Edge and/or Taleo.

32. A small number of recruiters were responsible for overseeing the recruitment, hiring, and intern activities of interns who participated in the FEG Internship Program.

33. Interns who participated in the FEG Internship Program were issued offer letters that welcomed them to the "Fox Entertainment Group Internship Program," required them to complete I-9 Employment Eligibility Verification Forms, labeled them as "at will" employees, and required them to sign a Worker's Compensation agreement and agree to abide by other corporate policies.

34. The personnel documents that interns who participated in the FEG Internship Program submitted and other personnel information, including dates of hire and termination, were centrally maintained by Defendants.

35. Defendants had the power to determine interns' compensation, including not paying most interns for the hours that they worked until approximately Fall 2010 when Defendants started paying interns.

36. Defendants had the power to determine whether to hire interns and whether to fire them, including when their performance failed to meet Defendants' expectations.

37. During all relevant times, each Defendant's annual gross volume of sales made or business done was not less than $500,000.

## JURISDICTION AND VENUE

38. The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and the FLSA, 29 U.S.C. § 216(b).

39. In addition, the Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because those claims arise out of the same common nucleus of operative fact as the federal claim.

40. Plaintiff's state law claims are so closely related to Plaintiff's claim under the FLSA that they form part of the same case or controversy under Article III of the United States Constitution.

41. Defendants are subject to personal jurisdiction in New York.

42. Defendant News Corp. maintains its headquarters in New York City, located at 1211 Avenue of the Americas.

43. Defendant FEG maintains offices at News Corp.'s headquarters.

44. The Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

45. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants maintain offices in this District and are subject to personal jurisdiction there.

## CALIFORNIA CLASS ACTION ALLEGATIONS

46. Plaintiff MacKown brings the Second, Third, Fourth, and Fifth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure, and seeks to represent: All individuals who had unpaid internships in California during the applicable statute of limitations periods with one or more of the following divisions of FEG: Fox Filmed Entertainment, Fox Group, Fox Networks Group, and Fox Interactive Media (renamed News Corp. Digital Media), and/or unpaid interns who participated in the internship program administered by Aimee Hoffman and/or Laura Wiggins ("California Corporate Intern Class")..

47. Excluded from the California Corporate Intern Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the California Corporate Intern Class.

48. The members of the California Corporate Intern Class are so numerous that joinder of all members is impracticable.

49. Upon information and belief, the size of the California Corporate Intern Class is more than 60 individuals.

50. Defendants have acted or have refused to act on grounds generally applicable to the California Corporate Intern Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

51. Common questions of law and fact exist as to the California Corporate Intern Class and predominate over any questions affecting only individual class members, and include, but are not limited to, the following:

(a) Whether Defendants employed and/or jointly employed Plaintiff MacKown and the California Corporate Intern Class within the meaning of the California Labor Code and California Wage Order No. 12;

(b) Whether Defendants had a policy or practice of failing to pay Plaintiff MacKown and the members of the California Corporate Intern Class the minimum wage for all hours worked in violation of Cal. Lab. Code §§ 1194, 1197, as alleged herein;

(c) Whether Defendants' classification of Plaintiff MacKown and the members of the California Corporate Intern Class as non-employees violated the California Labor Code and California Wage Order No. 12;

(d) Whether Plaintiff MacKown and the members of the California Corporate Intern Class performed work that provided an immediate advantage to Defendants;

(e) Whether Plaintiff MacKown and the members of the California Corporate Intern Class participated in an internship program that provided training similar to that which would be provided in an educational institution;

(f) Whether Defendants' requirement that Plaintiff MacKown and the members of the California Corporate Intern Class obtain school credit for their internships rendered Defendants' program a bona fide internship program that need not be paid;

(g) Whether Defendants' policy or practice of failing to pay Plaintiff MacKown and the California Corporate Intern Class was instituted willfully or with reckless disregard for the law; and

(h) The nature and extent of class-wide injury and the measure of damages for those injuries.

52. The claims of Plaintiff MacKown are typical of the claims of the California Corporate Intern Class he seeks to represent.

53. Plaintiff MacKown and all California Corporate Intern Class members were subject to the same compensation policies and practices. Plaintiff MacKown and the Corporate California Intern Class have all sustained similar types of damages as a result of Defendants' failure to comply with the CA UCL and California wage and hour laws.

54. Plaintiff MacKown will fairly and adequately represent and protect the interests of the California Corporate Intern Class. Plaintiff MacKown has retained counsel competent and experienced in complex class actions and employment litigation. There is no conflict between Plaintiff MacKown and members of the California Corporate Intern Class.

55. A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The members of the California Corporate Intern Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures and as a result of Defendants' violation of California wage and hour laws. Although the relative damages suffered by individual California Corporate Intern Class

members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. Individual plaintiffs lack the financial resources to conduct a thorough examination of Defendants' compensation practices and to prosecute vigorously a lawsuit against Defendants to recover damages stemming from such practices. In addition, class litigation is superior because it will prevent unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

56. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

## CLASS-WIDE FACTUAL ALLEGATIONS

57. It was Defendants' willful policy and pattern or practice to suffer and permit work by interns, including Plaintiff and the California Corporate Intern Class without paying wages for all hours worked.

58. At all times relevant, Defendants' unlawful conduct, policies, and patterns or practices described in this Class Action Complaint have been willful.

59. As part of their ongoing business practices, Defendants have intentionally, willfully, and repeatedly harmed Plaintiff and the members of the California Corporate Intern Class by engaging in a pattern, practice, and/or policy of violating the CA UCL and California wage and hour laws, as described in this Class Action Complaint.

60. Defendants' unlawful conduct described in this Class Action Complaint has been pursuant to a corporate policy or practice of minimizing labor costs by knowingly misclassifying Plaintiff and the members of the California Corporate Intern Class as unpaid interns in order to deny them compensation in violation of the law.

61. Defendants' unlawful conduct has been widespread, repeated, and consistent. Defendants' policies and practices as described herein are ongoing.

62. Defendants' unlawful conduct, as set forth in this Class Action Complaint, has been intentional, willful, and in bad faith, and has caused significant damages to Plaintiff and the California Corporate Intern Class.

63. Defendants' deceptive conduct prevented Plaintiff and the members of the California Corporate Intern Class from discovering or asserting their claims any earlier than they did.

## PLAINTIFF'S FACTUAL ALLEGATIONS

Consistent with its policies and patterns or practices as described herein, Defendants harmed Plaintiff individually as follows:

64. Plaintiff worked alongside other individuals whom Defendants also classified as unpaid interns, who performed productive work for Defendants and were paid no wages.

65. Plaintiff did not receive training similar to what would be given in an educational institution during his employment with Defendants.

66. The work that Plaintiff performed for Defendants was not for his own educational benefit.

67. Upon information and belief, Plaintiff displaced regular employees who otherwise would have performed his duties for Defendants.

68. Defendants derived an immediate advantage from Plaintiff's work.

69. From approximately February 2010 through approximately May 2010, MacKown worked for Defendants as an unpaid intern for Fox Soccer Channel in Defendants' corporate offices located in Los Angeles, California.

70. From approximately May 2010 through approximately August 2010, MacKown worked for Defendants as an unpaid intern for Fox Sports.com in Defendants' corporate offices located in Los Angeles, California.

71. MacKown regularly worked approximately 16 hours a week for Defendants.

72. MacKown's responsibilities as an intern for Fox Soccer Channel included the following:

(a) Watching soccer games on tape and logging the time codes of key plays and events for Fox employees to compile highlight reels to be used during Fox half-time shows; and

(b) Keeping track of soccer statistics so that Fox employees could discuss them on the air.

73. MacKown's responsibilities as an intern for Fox Sports.com included editing video clips from post-game interviews, including adding an introduction to the video clip and uploading it onto Fox's websites.

74. MacKown worked alongside paid employees who performed the same or similar duties that he performed.

75. MacKown was paid no wages at all for his work for Defendants.

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act – Minimum Wages**
**(Brought on behalf of Plaintiff MacKown)**

76. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

77. The minimum wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiff.

78. At all relevant times, Plaintiff was employed by entities engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 203(e),

(m), and 206(a), and/or entities engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 203(e), (r), and (s).

79. At all relevant times, Plaintiff was an employee of Defendants within the meaning of 29 U.S.C. § 203(e).

80. At all relevant times, Defendants have been enterprises engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(e), (r), and (s).

81. At all relevant times, Defendants employed Plaintiff within the meaning of 29 U.S.C. § 203(g).

82. Defendants failed to pay Plaintiff for work that they suffered or permitted in violation of 29 U.S.C. §§ 201 *et seq*.

83. As a result of the minimum wage violations, Plaintiff suffered damages in amounts to be determined at trial, and is entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

84. Defendants' unlawful conduct, as described in this Class Action Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this Class Action Complaint were unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff.

85. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

**SECOND CAUSE OF ACTION**
**California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.***
**(Brought on behalf of Plaintiff MacKown and the California Corporate Intern Class)**

86. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

87. Defendants have engaged in a widespread pattern, policy, and practice of violating the California Unfair Competition Law ("CA UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, which prohibits unfair competition including, *inter alia*, any unlawful or unfair business acts or practices, as detailed in this Class Action Complaint.

88. Beginning on a date unknown to Plaintiff, but at least as long ago as four years before the filing of this action, Defendants committed acts of unfair competition, as defined by the UCL, by, among other things, engaging in the acts and practices described herein. Defendants' conduct as herein alleged has injured Plaintiff and the members of the California Corporate Intern Class by wrongfully denying them earned wages, and therefore caused substantial injuries to Plaintiff and the members of the California Corporate Intern Class.

89. Defendants engaged in unfair competition in violation of the UCL by violating each of the following laws:

a. California Labor Code §§ 1194, 1197;

b. California Labor Code §§ 201, 202, 203, 204, and 226;

c. California Labor Code § 1174; and

d. Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*

90. California law requires an employer, such as Defendants, to pay minimum wages to all employees for all hours worked. Cal. Wage Order No. 12; Cal. Labor Code §§ 1194, 1197.

91. Defendants' practices violate the laws mentioned above and constitute separate and independent violations of the CA UCL. Defendants' conduct described herein violates the policy or spirit of such laws or otherwise significantly threatens or harms competition.

92. The unlawful and unfair business practices and acts of Defendants, described above, have injured the California Corporate Intern Class in that they were wrongfully denied the payment of earned wages.

93. Plaintiff, on his own behalf and on behalf of the California Corporate Intern Class, seeks recovery of attorneys' fees and costs of this action to be paid by Defendants, as provided by the UCL and California Labor Code §§ 218, 218.5, and 1194.

94. Plaintiff, on behalf of himself and the California Corporate Intern Class, seeks restitution in the amount of their unpaid wages.

## THIRD CAUSE OF ACTION
**California Labor Code §§ 1194 and 1197**
**(Brought on behalf of Plaintiff MacKown and the California Corporate Intern Class)**

95. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

96. Defendants have engaged in a widespread pattern, policy, and practice of violating the California Labor Code, Cal. Labor Code §§ 1194, and 1197, Cal. Wage Order No. 12, as detailed in this Class Action Complaint.

97. Defendants' conduct as alleged has injured Plaintiff and the California Corporate Intern Class by wrongfully denying them earned minimum wages.

98. California law requires an employer, such as Defendants, to pay minimum wages to all employees for all hours worked. Cal. Wage Order No. 12; Cal. Labor Code §§ 1194, 1197.

99. Plaintiff and the members of the California Corporate Intern Class are employees entitled to be paid minimum wages for all hours worked.

100. Defendants failed and refused to pay Plaintiff and the members of the California Corporate Intern Class minimum wages for the hours they worked.

101. Plaintiff, on his own behalf and on behalf of the California Corporate Intern Class, seeks recovery of unpaid wages, pre-judgment interest, and attorneys' fees and costs of this action.

**FOURTH CAUSE OF ACTION**
**(California Labor Code §§ 201-03: Wage Payment Violations)**
**(Brought on behalf of Plaintiff MacKown and the California Corporate Intern Class)**

102. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

103. California Labor Code §§ 201 and 202 require Defendants to pay its employees all wages due within the time specified by law. California Labor Code § 203 provides that if an employer willfully fails to timely pay such wages, the employer must continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced, up to a maximum of thirty days of wages.

104. Plaintiff and all members of the California Corporate Intern Class who ceased employment with Defendants are entitled to unpaid compensation, but to date have not received such compensation.

105. More than thirty days have passed since Plaintiff and the members of the California Corporate Intern Class have left Defendants' employ.

106. As a consequence of Defendants' willful conduct in not paying compensation for all hours worked, Plaintiff and the members of the California Corporate Intern Class are entitled to thirty days' wages under California Labor Code § 203, together with interest thereon and attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**(California Wage Order No. 4-2001; California Labor Code §§ 226, 1174, & 1174.5: Record-Keeping Violations)**
**(Brought on behalf of Plaintiff MacKown and the California Corporate Intern Class)**

107. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

108. Defendants knowingly and intentionally failed to provide timely, accurate, itemized wage statements including, *inter alia*, hours worked, to Plaintiff and California Corporate Intern Class members in accordance with California Wage Order No. 4-2001 and California Labor Code § 226(a). Such failure caused injury to Plaintiff and the California Corporate Intern Class, by, among other things, impeding them from knowing the amount of wages to which they are and were entitled. At all times relevant herein, Defendants failed to maintain records of hours worked by Plaintiff and California Corporate Intern Class members as required under Labor Code § 1174(d).

109. Plaintiff and California Corporate Intern Class members are entitled to and seek injunctive relief requiring Defendants to comply with California Labor Code §§ 226(a) and 1174(d), and further seek the amount provided under California Labor Code §§ 226(e) and 1174.5, including the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on his own behalf and on behalf of all other similarly situated persons, seeks the following relief:

A. Unpaid minimum wages and an additional and an equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor regulations for Plaintiff MacKown;

B. A declaratory judgment that the practices complained of herein are unlawful under appropriate state law;

C. Appropriate equitable and injunctive relief to remedy Defendants' violations of state law, including but not necessarily limited to an order enjoining Defendants from continuing its unlawful practices;

D. An award of damages, liquidated damages, appropriate statutory penalties, and restitution to be paid by Defendants according to proof for Plaintiff and the California Corporate Intern Class;

E. Certification of the California Corporate Intern Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

F. Designation of Plaintiff as a class representative and counsel of record as Class Counsel;

G. Pre-judgment interest and post-judgment interest;

H. Such other relief as this Court shall deem just and proper.

Dated: New York, New York
June 25, 2013

Respectfully submitted,

**OUTTEN & GOLDEN LLP**

By: ______________________
Adam T. Klein

**OUTTEN & GOLDEN LLP**
Adam T. Klein
Rachel Bien
Juno Turner
Sally J. Abrahamson*
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
**pro hac vice motion forthcoming*

**Attorneys for Plaintiff**